Our next case for argument is Kim v. Jump Trading. Mr. Martinez. Good morning, Your Honor. May I please the Court? Roman Martinez for the defendants. In their arbitration contract with TFL, plaintiffs expressly agreed that an arbitrator would resolve all threshold arbitrability disputes. We're asking you to enforce that commitment here. The Supreme Court in Housham and your court in Geneva have made clear that whether a non-signatory has contractual rights or obligations to arbitrate raises a classic question of arbitrability. That means the equitable estoppel dispute here is about arbitrability. And under the contract, that arbitrability dispute, like all arbitrability disputes, must be resolved by an arbitrator, not by the court. Now, plaintiffs make four different arguments against us. They invoke the CCC case, the principle that courts have to decide contract formation, the you-we language in the first paragraph of section 18, and the specter of frivolous arbitration motions. None of these arguments holds water. Let me start with the CCC. There, the key thing to know is that the defendant tractable affirmatively agreed with the plaintiff that the court, not the arbitrator, should decide arbitrability. It did that most clearly at pages 3, 17, and 24 of its opening brief, and at pages 2 and 8 of its reply brief. Because of that concession, that concession that both parties acknowledged that the court had to decide arbitrability, the CCC court did not resolve the who-decides debate that's now front and center in this case. And of course, they conceded that because of AT&T technologies against communications workers. That's your problem. No, Your Honor, they actually reversed an argument that they had made in the district court. No, I'm saying that AT&T technologies is your problem. It's a decision of the Supreme Court which says that judges decide whether a contract between the parties even exists. And that was the judge's holding here, that there was no contract, is no contract between him and Junk Trading that includes an arbitration clause of any kind. I think the qualification that AT&T made and that the subsequent cases including Howsam have made when talking about that exact language from AT&T is that if there's clear language that the parties did intend to delegate arbitrability, and that's the quote arbitrability, then the arbitrability question is decided by the arbitrator. And here, the parties used classic arbitrability language. They used literally the word arbitrability in the second paragraph of section 18 to delegate arbitrability disputes to the arbitrator. The difficulty that I have with that, I understand it just fine. I mean, you wrote a good brief, you're articulate, I get it, is that it seems unmoored from the contractual foundations of arbitration laws, we've thought about it. I would disagree with that, Your Honor, because I think that the parties by contract can agree to arbitrate threshold issues including arbitrability in a delegation clause. Yeah, the key part of what you just said there is the parties. Right, and the parties to the contract, plaintiffs and TFL, who are the parties to that contract, they said in their contract, we're going to arbitrate arbitrability. That was the word they used in the contract. And our position is that the word arbitrability carries with it the standard meaning of arbitrability from contract law and arbitration law. And that standard meaning, and we know this from how some of the- Is there any limit though to what non-party can be swept into that? I think a non-party can always sort of assert a frivolous arbitration motion, but that frivolous arbitration motion to compel arbitration is going to be ultimately rejected by the arbitrator. Henry Schein tells us that the fact that a party can make a frivolous motion to compel arbitration is not a reason not to enforce the arbitration law. Why would the plaintiffs have to go to arbitration in the first instance against any defendant? What you're saying, I think, is any defendant can file a frivolous motion to arbitrate or whatever you would call it. Any defendant can bring the plaintiffs, haul them in front of an arbitrator. And you're just saying, oh, we should just trust the arbitrator to throw out that- Well, I think the principle of arbitration law is that we do trust arbitrators to make the right decision. And if there's a frivolous motion- So you think AT&T communications was decided incorrectly? Absolutely not. I think it was totally correct, but so was the importantly- But then I don't understand why this case isn't governed by AT&T. Because I think it is governed by AT&T and the subsequent cases that have made clear that arbitrability disputes can be delegated to an arbitrator and- Look, as I understand it, an arbitrability dispute arises when an arbitration contract, when a contract with an arbitration clause agrees to arbitrate issue A but not issue B. And the contract can delegate to the arbitrator the choice of which of these things is true. The problem in this case appears to be that Kim has never agreed to arbitrate anything with junk trading. Not anything. Can I disagree with that, Your Honor? I think, let me just try to get all this out. I think the contract between plaintiffs and TFL, plaintiffs agreed to arbitrate arbitrability issues- With TFL. No, that's not what it said, Your Honor. It said arbitrability issues. And my submission is that- All right, so then let me ask this question. Suppose Kim buys a Ford, and there's no arbitration clause in his contract with Ford. And he contends it's a lemon. Does he have to go and arbitrate the question whether it's a lemon because he has ever signed an arbitration contract with a clause allowing the arbitrator to determine arbitrability? If he wants to sue Ford, of course not, because the arbitrability, he would- Exactly. It's because he didn't agree to arbitrate with Ford. No, it's not for that reason. It's because the scope of the dispute between the plaintiff and Ford would not fall within the three types of cases that are spelled out that are subject to the arbitration agreement that plaintiffs did sign, which was not with Ford, but with TFL. So it's like a subject matter nexus that would keep it from being frivolous? I think it's a standard. This is a linguistic point I'm making about the word arbitrability. And if I could just finish it, and then we can talk about others.  The linguistic point is that arbitrability, as a matter of contract law, as the Supreme Court has discussed it in Housam, and you discussed it in Geneva, arbitrability picks up the concept of arbitrability with non-signatories under the traditional non-signatory enforcement doctrines like equitable estoppel, okay? So if that's true, then when plaintiffs said to TFL, we're going to arbitrate arbitrability in any case in which we're alleging that you committed a violation of law, then they would also pick up, make a commitment to arbitrate arbitrability when that kind of case comes up when they're suing a different party, but they're still alleging that TFL violated, for example, the Commodities Act, as they did here. So we think the textual use of the word arbitrability combined with the fact that in contract law, arbitrability always picks up these background principles of non-signatory enforcement means that this contract itself committed plaintiffs to arbitrate this arbitrability dispute about equitable estoppel, even though this party, JUMP, is not, was not a party to that contract. Let me just give you a hypothetical to show why this is not some sort of crazy result. Imagine plaintiffs and TFL had written a contract that said, if there's any dispute involving JUMP that bears on, you know, the token, we're going to arbitrate any case between either one of us and JUMP. So if they'd expressly said, we're going to arbitrate disputes between us and JUMP, even though JUMP is not a party to that contract, I think everyone would agree that that dispute, if it was brought against JUMP, JUMP would be able to come into court and say, hey, look, there's a contract in which the plaintiffs have expressly said that we're going to arbitrate it. Now, this case isn't quite as good as my hypothetical for me because it's not quite as express, but what the parties did do in the contract was use the word arbitrability. And what the Supreme Court in Housham and what you and Janneika said is that arbitrability, that word encompasses disputes about non-signatory enforcement. So that's where I think we get pulled into the contract. Now, to get us out of the contract, the other side is making a handful of arguments. The contract formation argument that they make doesn't work because of the hypothetical I gave you. It's just not the case that there's, you can never, as a non-party, enforce an arbitration agreement. If the parties say that they're going to arbitrate a dispute with a non-party and then they sue the non-party, that's something that they've contractually committed to arbitrate. The CCC case, which is their primary argument on appeal, did not resolve this question because when the parties got to the Seventh Circuit in CCC, they did not say what we are saying. Tractable did not say, hey, this threshold question needs to be decided by an arbitrator. Tractable said over and over in its brief that the threshold question was a question of contract formation and it needed to be decided by the court. And that's why even the district court that ruled against us on this acknowledges that the CCC court didn't resolve it and instead it points to the district court's decision in CCC where it was contested. The tractable, the defendant in CCC, made a deliberate decision to abandon the argument it had made in the district court and to make a different argument at this court where they did not ask the threshold arbitrability question to be sent to the arbitrator. That decision can't have any bearing on us because we are making the exact argument that tractable abandoned, waived, did not make. CCC does not govern us here. Now the other arguments that the other side makes we don't think have any more merit. We've already talked about the argument that's inconsistent in our view with Henry Schein. They also make this argument about the you, we language in the first paragraph of Section 18. That fails for two reasons. Essentially, one is that that's sort of boilerplate ubiquitous language that does not enough to cancel out the traditional non-signatory enforcement doctrines that the Supreme Court recognized in Arthur Anderson. And the second problem with that argument is that it misunderstands the text and the purpose of the first paragraph of Section 18. That first paragraph is not designed to set to decide which cases go to arbitration and which cases don't. It's designed to create a special rule for a pre-filing informal dispute resolution mechanism. The operative language is the second paragraph and the second paragraph says that all disputes as to arbitrability go to the arbitrator. So we don't think any of those arguments work. But I'd like to just take a minute and go to the equitable estoppel issue as well. Because I think that if you disagree with us on the who decides question, we still have the equitable estoppel. Yeah. And when you do that, Mr. Martinez, can you get to the choice of law question in federal common law in particular? Sure. So we think as a matter of choice of law, this contract clearly falls within the New York Convention. And because of that, it satisfies the, essentially, it satisfies the Boyle two-prong test for federal common law applying. We think that's pretty straightforward. We would refer you to Judge Choflat's opinion explaining all this in the Otocompo case in the 11th Circuit in his concurrence. I think the trickier question is what is the federal common law test? And different jurisdictions have said different things. We think the best articulation of the federal common law test is what the 11th Circuit said in the MS Dealer case. And it recognized that there are different flavors, there are different varieties of federal common law equitable estoppel. And the one that we're invoking here is the one that the 11th Circuit described as a situation in which the signatory alleges, quote, substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories. We think that's the correct federal common law test. We think that that test is best designed to protect the rights of the signatory, who's not in this case, TFL. TFL, if it's not in this case, is going to have its own conduct put before a district court. It's going to be subject to third party discovery. It's not going to get the benefits of confidentiality. We're probably going to have to implete it. It's going to essentially become a party to a federal case, even though plaintiffs promised that that wasn't going to be the case because that was that was in their arbitration agreement. So we think that federal common law equitable estoppel test is that one. And under that one, we would we would prevail. I see I'm into my rebuttal time. I would love to answer any questions on the front end that the court has about any of these issues, but if not, perhaps I'll reserve the balance of my time for rebuttal. Ms. Scott. Good morning, Your Honors. Corey Stoughton for the appellees in this case. Plaintiffs are bringing commodities fraud claims against jump a party that they have no contractual relationship with and do not seek to enforce any contractual rights against and jump is seeking to compel arbitration of plaintiff's claims without a court making any gateway determination other than to determine the existence of a dispute resolution procedure agreed between plaintiffs and a different party, TFL, which delegated questions about the arbitrability of certain of those parties disputes to an arbitrator. The agreement between plaintiffs and TFL governed only the use of the anchor protocol, which functioned as a sort of wallet in which some of the plaintiffs chose to store the assets that were subject to these commodities fraud claims. So the anchor protocol was really in the background of the story of what happened here, but none of plaintiff's claims against jump have anything to do with the anchor protocol. Because of that, the district court rightly adjudicated whether equitable estoppel gives jump a contractual basis for compelling arbitration under the anchor protocol contract and found that jump couldn't meet the applicable Illinois test for equitable estoppel, a conclusion that holds even if federal common law governs that question. Ms. Stoughton, can I ask you a broader question? Yes. Are you asking us to hold that non-signatory enforcement of an arbitration agreement is always 100% of the time a question for courts? No, Your Honor. We're asking this court only to apply the well-established test that there's a presumption, of course, that courts decide arbitrability questions. That's long been decided, but that that presumption can only be overcome when there's clear and unmistakable evidence in the agreement that the parties agreed to delegate that arbitrability issue to the arbitrator. And this is where my friend's argument goes sideways because the idea that using the word arbitrability is some kind of magic talisman that then results in all other further questions about arbitrability to be delegated to an arbitrator when any stranger comes up to a contract and seeks to use equitable doctrines to create rights to enforce promises in that contract between two other parties is a bit too far. I think Mr. Martinez would agree with you on that. I think on the, what were you talking about, a Ford product liability claim or something, I think he would agree with you that way. But that's, but what about when you get into a very tight kind of nexus of factual interdependence, subject matter, and all that? How does your proposition work there? Well, just to take one step back, what we're doing here in this exchange is applying the clear and unmistakable evidence standard to ask whether Jump has met its burden because the presumption in favor of arbitrability is flipped in this situation to establish that clear and unmistakable evidence. And what we would urge the court to hold and what the district court held below is that a contract between two parties to generally delegate arbitrability issues relating to disputes between those parties is not clear and unmistakable evidence of a specific agreement to arbitrate the entitlement of non-parties to compel arbitration of their disputes under estoppel principles. Now, and this distinction is why there is no applicable circuit split here because all of the cases that the parties have put before the court are applying that general test of is there clear and unmistakable evidence to different contracts and different facts. This contract, for example, had a provision that said that TFL's rights also belong specifically to its assignees. If Jump had a claim that it was an assignee under this contract, we'd be in a very different situation. But it doesn't. Instead, we're talking about estoppel issues and not only estoppel issues generally but a specific estoppel claim made by Jump which has very no relationship whatsoever to the contract and is really based solely on the nature of plaintiff's commodities exchange claims and a very attenuated argument that the nature of those claims is somehow connected to this contract which was not even generally an arbitration contract between TFL and plaintiffs but a specific dispute resolution mechanism about disputes between those two parties relating to the anchor protocol which is not implicated or a part of plaintiff's claims against Jump in any way. That contract, that agreement between TFL and the plaintiffs does not contain clear and unmistakable evidence that these plaintiffs agreed to arbitrate Jump's claim to enforce the arbitrability clause, the delegation clause through this equitable, this attenuated equitable estoppel theory. That's that kind of specific level of analysis that you're looking for. I think the court is well familiar with the basic premises that lead to those conclusions, the idea that arbitration is a matter of contract, strictly a matter of contract as the Supreme Court recently affirmed in Coinbase versus Siskey and that clear and unmistakable evidence standard. And I think it's critical that in discussing the clear and unmistakable evidence standard, the Supreme Court has always talked about that burden in terms of the specific arbitrability issue which really undermines my friend's attempt to say that once a contract says arbitrability, any other further questions are for the arbitrator. Instead, in cases like AT&T Technologies, kind of the found source of this doctrine, the Supreme Court said that arbitrability, whether a contract creates a duty for the parties to arbitrate the particular grievance is undeniably an issue for judicial determination and Henry Schein, they said before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists and if the agreement delegates the arbitrability issue to an arbitrator. And in Granite Rock, the Supreme Court said, a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute. That means that Jump needs to not just show that there was a general arbitrability clause in the agreement between plaintiffs and TFL but that their enforcement issue, their arbitrability issue was a part of the agreement that plaintiffs made with TFL and that they just can't do on these facts on this contract and given their specific theory of equitable estoppel. As a legal stranger to the contract and to plaintiffs, Jump needs more than that general arbitrability delegation clause to meet its burdens here as the Ninth Circuit already held correctly looking at this exact same contract, assessing the exact same arguments from the same party in the Patterson case. And that's particularly so here because unlike in some cases, the delegation clause here is contained in a party-specific dispute resolution protocol that starts with a bilateral exhaustion agreement in the first paragraph of Section 18 of the contract and that's at A154. A bilateral exhaustion requirement between TFL and the plaintiffs which indicates this kind of party-specific dispute resolution mechanism and then only graduates to arbitration of disputes between, quote, you and, quote, us, where us is defined solely as TFL. And that's not just merely party-defining language as my friend put it earlier a few moments ago. That is clear indication of a party-specific dispute resolution mechanism that can't, it's just simply not enough to constitute that clear and unmistakable evidence that Jump is required to show. And, you know, to show other, to hold otherwise would create a direct conflict with this court's decision in CCC. Just like in CCC, this is a contract or a case rather about whether C can claim rights under a contract that has only A and B as parties. In CCC, this court answered that question and the same goes here. My friend argues that this point of who decides was conceded by the party, by Tractable in CCC. But I think as Judge Easterbrook's question gets at, that that party was really, the citations that Mr. Martinez is offering are really only concessions that the general rule of AT&T Technologies exists. That party was still, that party Tractable was still asking for the same exception to that rule that Jump is asking for here. And, you know, I listened to the oral argument in CCC and the first line of oral argument in that case is we are here to decide who decides. So that seems a little bit inconsistent with the idea that Tractable was waiving the question that's at issue in this case. But a ruling in this case isn't, wouldn't just create a conflict with CCC, it's also inconsistent with the Supreme Court's decision in Suskie. In Suskie, the Supreme Court held that a court should resolve disputes about whether a particular contract governs the question of who decides arbitrability. Now, there the question was whether one contract or a different contract governed that question. And here the question is whether one contract or no contract governs the arbitrability question here. But it's the same category of question, it's what Justice Jackson referred to in her majority opinion there as a fourth order question. And it's a category the Supreme Court has said is for this court to decide. That's a gateway responsibility that's founded in the text of the Federal Arbitration Act which requires that a federal court only compel arbitration upon being satisfied of the making an agreement for, of an agreement for arbitration that that's not an issue. And Jump's only answer to that is to say the making of a contract between plaintiffs and TFL is not an issue. But that puts the cart before the horse. To meet its burden of showing clear and unmistakable evidence that the contract, this contract governs Jump's arbitrability issue, Jump has to win its equitable estoppel argument. Equitable estoppel by definition assumes there is no contract between the parties. That's why you need equitable estoppel. And Jump's particular equitable estoppel theory is not based on the contract at all. It's based solely on the allegation or the nature of the allegations against Jump as I've already, you know, gone over. And that distinguishes this question from other non-signatory enforcement issues where the existence of the signatory's contract could satisfy Section 4 of the Federal Arbitration Act and the non-signatory's enforcement of the signatory's rights of the contract can be seen as a, as a delegable enforcement issue. But here Jump isn't claiming to enforce TFL's contractual rights here. It's trying to use equitable doctrines to create its own rights. And so as a result, its burden is even higher and it has not met its burden to show that there's actually an agreement here to delegate its arbitrability issues. Can you spend a minute or two on the choice of law question? Yes, Your Honor. I'll turn to that right now. So Jump argues to an exception, Jump agrees that the general rule is that state law governs questions of equitable estoppel in the arbitration context. But argues for an exception to that rule because the New York Convention applies to the contract between TFL and the plaintiffs. Now we agree with the district court that whether, that the New York Convention does not apply here because it's a pre, we're in a precursor to the contract land where Jump is trying to seek to take advantage of contractual rights. And the question is does the contract to which the convention would apply even apply here? But even if you don't agree with that. Isn't there, isn't, the only way we get to the convention is through section 202, 9 U.S.C., right? That's right. And is the point you're making, you just can't, there's no gateway through 202 to the convention. That we haven't passed through that gateway yet. That's right because the contract, the New York Convention may apply to TFL's contract with the plaintiffs. It certainly does, doesn't it? Right. But the question here is whether that contract is something Jump has any rights under. So we haven't walked through the gateway of the convention yet. And that's what the district court has to say. I think Mr. Martinez is going to say though that you need to step back and ask the section 202 question at a little bit higher level of generality. What is the arbitration, if there is an arbitration agreement that exists, what is it? It's the one in the terms of service. Therefore, the 202 gateway, that's my term. I understand, Your Honor. And look, I want to skip over that question for a minute. I think there's an open question there. I think what the district court said was that that is allowing a party Jump to take advantage of contractual rights before the court is determined that it has a right to do so. And no court, there is no case law on this point because it's quite a unique situation. I think the court doesn't have to decide that issue because even if the New York Convention applies here, state law applies. And that flows directly from the Supreme Court's decisions in Arthur Anderson versus Carlisle and GE Energy. So in Arthur Anderson versus Carlisle, the Supreme Court rejected the argument that federal interests in arbitration trump the application of state law equitable estoppel principles. And in GE Energy, the Supreme Court confirmed that that principle applies with equal force to arbitration agreements governed by the New York Convention. That forecloses any argument here that there's a conflict between the application of state law estoppel principles and any uniquely federal interest under the Boyle test that Mr. Martinez is arguing for. The Supreme Court has already addressed. I'm not following that. Why? So the Boyle test has a two-step process. First, is there a federal interest? And second, is there a specific conflict between that federal interest and the application of state common law? And in Arthur Anderson, that federal interest here is a federal interest in the uniform application of arbitration. In the context of domestic disputes, in Arthur Anderson, the Supreme Court said, we agree, you know, you could say under the first prong of Boyle, there's a federal interest here in uniform and consistent application of arbitration contracts. But under that second prong, there's not enough of a conflict between that federal interest, excuse me, and the application of state common law. In GE Energy, the principle underlying that case is that there's no distinction between the interest in arbitration articulated under the New York Convention and that same interest that the Supreme Court was grappling with in Arthur Anderson. So one plus one equals two. It's very, those two decisions foreclose the idea that there's a specific conflict. And that jives with, as our briefs go over, the over-reading of certain underwriters that is behind Jump's argument here. Certain underwriters did not hold as a general matter that federal common law governs this question. It held that there was a specific conflict between the specific measurement of dates in the application of state common law to determine what, you know, which holidays and which dates count in the calculation of time limits. Jump has not pointed to any such specific conflict between the application of state common law equitable estoppel principles here that would suffice to satisfy that second step of Boyle, and certainly not in the context of the Supreme Court already addressing this. In fact, under- Thank you, Ms. Stoughton. Thank you, Your Honor. Anything further, Mr. Martino? Thank you, Your Honor. Just a few points in rebuttal. First of all, on the arbitrability issue, I think both sides of this case, I heard my friend on the other side concede that a non-signatory can compel arbitration if a contract clearly says so. Our position is that this contract clearly compels arbitration of arbitrability disputes. It says that. It uses the word arbitrability directly in the second paragraph of Section 18. And as we've explained, arbitrability is a term of art that the Supreme Court and this Court have recognized encompasses arbitrability disputes about whether non-signatories can enforce. They say that the language, any claim or controversy as to arbitrability isn't specific enough to cover this dispute. But any dispute, any claim or controversy as to arbitrability means all claims or controversies as to arbitrability. And it covers the equitable estoppel dispute here. The larger problem is that the other side, I think, is misunderstanding the purpose of the clear and unmistakable evidence requirement. If you go back to Renta Center and the cases, First Options and others that created that requirement, the whole idea there is to reflect the intention of the parties and recognize that the arbitration of arbitrability concept is so arcane that parties probably didn't intend to delegate arbitrability issues at all. But that's why you need to express language. But once you have expressed language delegating arbitrability, then you know that the parties did think about the arbitrability issue, that clear and unmistakable requirement is satisfied, and you're just left with a question of contract interpretation, which as we've explained, the word arbitrability encompasses non-signatory arbitrability disputes. With respect to the equitable estoppel choice of law issues, Judge Scuddery, you're absolutely right, you have to go to 202. 202, there's no question this is a commercial arbitration agreement. The next sentence of Section 202 says that if the case is between citizens of the United States and it involves an agreement or award arising out of such a relationship, then it might be excluded by the convention. Here, the agreement or award at issue is the one with TFL, which is a Singaporean entity and therefore is not accepted. And with that, I think I'll ask you to enforce the agreement and compel arbitration here, Your Honors. Thank you. Thank you. The case is taken under advisement.